IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SHANDRA KENIECE JONES,    )
    Plaintiff,           )
                    )
v.                     )    CIVIL ACTION NO. 1:20-00527-N
                    )
                    )
KILOLO KIJAKAZI, *Acting*    )
*Commissioner of Social Security*,  )
    Defendant.        )

## MEMORANDUM OPINION AND ORDER

Plaintiff Shandra Keniece Jones brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying her applications for a period of disability and disability insurance benefits (collectively, "DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*[1] Upon due consideration of the parties' briefs (Docs. 31, 32, 34) and those portions of the certified transcript of the administrative record (Doc. 14) relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.[2]

---

[1] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. § 1382(a)." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

[2] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this

## I.    *Procedural Background*

Jones filed the subject DIB and SSI applications with the Social Security Administration ("SSA") on June 4, 2018. After they were initially denied, Jones requested, and on October 10, 2019, received, a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review. A supplemental hearing was held before the ALJ on April 14, 2020. On April 29, 2020, the ALJ issued an unfavorable decision on Jones's applications, finding her not disabled under the Social Security Act and therefore not entitled to benefits. (*See* Doc. 14, PageID.69-93).

The Commissioner's decision on Jones's applications became final when the Appeals Council for the Office of Disability Adjudication and Review denied her request for review of the ALJ's unfavorable decision on September 16, 2020. (*Id.*, PageID.58-62). Jones subsequently brought this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party,

---

civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 37, 39).

    With the Court's consent, the parties jointly waived the opportunity to present oral argument. (*See* Docs. 38, 40).

irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.    *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South, LLC* v. *Roswell*, 574 U.S. [293], [301], 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court "'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'" *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). "'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.'" *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). *See also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("A preponderance of the evidence is not required. In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." (citation omitted)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th

Cir. 2004) (en banc) (citations and quotation omitted).[3]

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light

---

[3] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter*, 808 F.3d at 822 ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (per curiam) (unpublished) ("The question is not, as Werner suggests, whether ALJ could have reasonably credited his testimony, but whether the ALJ was clearly wrong to discredit it." (footnote omitted)); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

of all the relevant facts.").[4]

---

[4] However, the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L.Ed.2d 532 (2009). *See also Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. Unit A Sept. 8, 1981) (per curiam) ("It is the claimant who bears the weighty burden of establishing the existence of a disability within the meaning of the Act, and therefore the appellant has the burden of showing that the Secretary's decision is not supported by substantial evidence in the record." (citation omitted)); *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (unpublished) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) ... As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam)

---

Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding.").

(quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's

decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[5] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

Eligibility for DIB and SSI requires a showing that the claimant is disabled, 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2), meaning that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

---

[5] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[6]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Although the "claimant bears the burden of demonstrating the inability

---

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached a decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per

curiam) (quotation and brackets omitted)).

When, as here, the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

## III.   *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Jones met the applicable insured status requirements for DIB through March 31, 2019, and that she had not engaged in substantial gainful activity since the amended alleged disability onset date of November 28, 2016.[7] (Doc. 14, PageID.75). At Step Two,[8] the ALJ determined that

---

[7]   "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore*, 405 F.3d at 1211 (citation omitted).

In her applications, Jones initially alleged a disability onset date of February 10, 2015, but she amended it at the supplemental hearing. (*See* Doc. 14, PageID.72).

[8] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. *See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (Step Two "is a 'threshold inquiry' and 'allows only claims based on the most trivial

Jones had the following severe impairments: asthma, neck and back disorder, foot disorder, carpal tunnel syndrome, depression, anxiety, migraines, narcolepsy, obesity, history of a seizure disorder, and vertigo. (Doc. 14, PageID.75-76). At Step Three,[9] the ALJ found that Jones did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 14, PageID.76-79).

At Step Four,[10] the ALJ determined that Jones had the residual functional

_____

impairments to be rejected.' " (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.' " *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

[9] Conversely to Step Two, Step Three "identif[ies] those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153. *See also Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997) ("If the claimant's condition meets or equals the level of severity of a listed impairment, the claimant at this point is conclusively presumed to be disabled based on his or her medical condition.").

[10] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. §

capacity (RFC) "to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)[11] except that [she] can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl[;] can frequently handle and finger bilaterally[;] should never be exposed to unprotected heights, moving mechanical parts, large open bodies of water or engage

---

404.1520(e).

> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted). "[A]n ALJ's RFC assessment is an administrative finding based on all the relevant evidence, including both medical and nonmedical evidence." *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1065 (11th Cir. 2021).

[11] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. The criteria for "sedentary" work are as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).

in commercial vehicle driving[; her] ability to understand, remember, and apply information and concentrate, persist, and maintain pace is limited to performing simple and routine tasks, and some detailed but uninvolved instructions consistent with reasoning level one and two occupations[; and s]he can interact with supervisors and coworkers frequently, and the public occasionally, as well as deal with occasional changes in a routine work setting." (Doc. 14, PageID.79-85).

Based on the RFC and the testimony of a vocational expert,[12] the ALJ found that Jones was incapable of performing any past relevant work. (Doc. 14, PageID.85). However, at Step Five, after considering additional testimony from the vocational expert, the ALJ found that there exist a significant number of jobs in the national economy (65,000) as a clerical addresser that Jones could perform given her RFC, age, education, and work experience. (*Id.*, PageID.85-86). Thus, the ALJ found that Jones was not under a disability as defined by the Social Security Act from the disability onset date through the date of the ALJ's decision.  (*Id.*, PageID.86-87).

---

[12] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

# IV.   *Analysis*

### a.   **Dr. Hopkins's Medical Opinion**[13]

First, Jones argues that the ALJ erred in rejecting the medical opinion of Brian Hopkins, D.O., who performed a consultative examination of Jones on November 9, 2019. No reversible error has been shown on this issue.

"Medical opinions" are one category of evidence the Commissioner considers during the disability adjudication process. *See* 20 C.F.R. §§ 404.1513(a)(2) 416.913(a)(2). The Social Security regulations applicable to Jones's applications[14] define "medical opinion" as "a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [he or she] ha[s] one or more impairment-related limitations or restrictions in the following abilities: … (i) [the] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) [the] ability to perform mental demands of work activities, such as

---

[13] The undersigned addresses Jones's claims in a different order than in which she has made them.

[14] On January 18, 2017, the SSA substantially revised the regulations governing how the Commissioner considers medical evidence, including medical opinions. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15,132 (Mar. 27, 2017). The rules for evaluating medical opinions found in 20 C.F.R. §§ 404.1520c and 416.1520c apply to claims filed on or after March 27, 2017, such as Jones's. *Compare* 20 C.F.R. §§ 404.1520c, 416.920c (applicable to claims filed on or after on or after March 27, 2017) *with* 20 C.F.R. §§ 404.1527, 416.927 (applicable to claims filed before March 27, 2017). The revisions also changed what constitutes a "medical opinion." *See* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) (defining "medical opinion" while specifying that "the definition of medical opinion" found in §§ 404.1527 and 416.927 applies to claims filed before March 27, 2017).

understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) [the] ability to perform other demands of work, such as seeing, hearing, or using other senses; and (iv) [the] ability to adapt to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). The Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) …, including those from [the claimant's] medical sources." *Id.* §§ 404.1520c(a), 416.920c(a). Instead, "[w]hen a medical source provides one or more medical opinions …, [the Commissioner] will consider those medical opinions … from that medical source together using [the following] factors[,]" *id.*: supportability, consistency, relationship with the claimant, specialization, and "other factors." *Id.* §§ 404.1520c(c), 416.920c(c).

"The most important factors … are supportability … and consistency…" *Id.* §§ 404.1520c(a), 416.920c(a). *Accord id.* §§ 404.1520c(b)(2), 416.920c(b)(2). "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) … , the more persuasive the medical opinions … will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" means that "[t]he more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). The Commissioner "will explain how [the

Commissioner] considered the supportability and consistency factors for a medical source's medical opinions … in [the] determination or decision." *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). On the other hand, the Commissioner "may, but [is] not required to, explain how [the Commissioner] considered the [other] factors … when … articulat[ing] how [the Commissioner] consider[ed] medical opinions … in [the] case record[,]" *id.*, unless the Commissioner "find[s] that two or more medical opinions … about the same issue are both equally well-supported … and consistent with the record … but are not exactly the same…" *Id.* §§ 404.1520c(b)(3), 416.920c(b)(3).

The ALJ addressed Dr. Hopkins's opinion as follows:

The claimant was examined on a consultative basis in November 2019 by Dr. Hopkins (Exhibit B30F). Physical examination findings demonstrated no clubbing, cyanosis, or edema, no balance problems, good hand-eye coordination, no palpable muscle spasms, and normal muscle tone. The claimant had negative bilateral straight leg raise, no swelling, erythema, effusion, tenderness, or deformity, and she could pinch, grasp, and manipulate small and large objects without difficulty. The examiner noted the claimant had a guarded, restricted gait pattern, and needed an assistive device to ambulate. Dr. Hopkins assessed the claimant with absent seizures and narcolepsy. Dr. Hopkins opined the claimant was limited to less than a full range of sedentary work, to include sitting, standing, and walking for a total of less than 8 hours a day. Dr. Hopkins opined the claimant was unable to climb ladders or scaffolds, stoop, kneel, crouch, or crawl. This opinion is not consistent with or supported by the evidence of record. For example, many of the limitations assessed by Dr. Hopkins were based on issues no other provider has assessed, such as fibromyalgia and syringomyelia. Further, the record indicates no treating physician has opined the claimant requires an assistive device. This opinion is more restrictive than what is warranted by the record or her routine minimal abnormal examination findings. It was almost solely based on his unfounded belief

she suffered from a condition she has not been diagnosed with or treated for. Accordingly, this opinion is not persuasive or based on objective medical evidence (Exhibit B30F).

(Doc. 14, PageID.81-82). Jones challenges each of the ALJ's stated reasons for rejecting Dr. Hopkins's opinion.

The undersigned agrees with Jones that the ALJ was wrong to state that "no other provider" had assessed Jones with fibromyalgia. (*See* Doc. 14, PageID.692 (diagnosis of fibromyalgia and prescription of lyrica for same by Kristina Ray, M.D.), PageID.705 (progress note from CRNP at Alabama Orthopaedic Clinic, PC, noting fibromyalgia as part of past medical history), PageID.743 (Anna Seay, M.D., notes Jones has "hx fibromyalgia"), PageID.806 (Ilyas Shaikh, M.D., noting Jones "has history of fibromyalgia")). The fact the ALJ found at Step Two that Jones's fibromyalgia did not meet the "demanding standard" of Social Security Ruling 12-2p to qualify as a medically determinable impairment (*see id.*, PageID.75-76) does not negate the fact that multiple medical sources still noted the condition in some fashion. Nevertheless, this error is ultimately harmless, as the ALJ's other reasons for rejecting Dr. Hopkins's opinion are sound.

As for syringomyelia, the ALJ found it be a non-medically determinable impairment because there was "no objective medical evidence, diagnostic testing, or diagnoses by treating physicians to support th[is] impairment[] in the record during the relevant period." (*Id.*, PageID.75). Jones "concedes that the records do not contain an official diagnosis of Syringomyelia[,]" (Doc. 32, PageID.1131); at most, there is a note from Gulf Neurology Center dated October 19, 2018, stating that Jones reported

that she "[o]nce was told of Chiari Malformationa dn Syringomyelia and no treatment has been provided." (Doc. 14, PageID.806). Jones does point to the results of a December 7, 2012 CT scan of her head showing findings "suggestive of a Chiari 1 malformation" (Doc. 14, PageID.588), which she asserts is indicative of syringomyelia and thus provides objective support for Dr. Hopkins's diagnosis. However, the ALJ's point was that no <u>other</u> provider had diagnosed the condition, and it is reasonable for the ALJ to question why such a serious diagnosis would not appear in the records of her treating physicians. Regardless, Jones admitted that she was not receiving treatment for the condition, suggesting its limiting effects were minimal.

It was also reasonable for the ALJ to question why no treating medical source had noted the need for an assistive device, particularly given the length of time the medical records in evidence spanned, and the number of other medical sources who also provided records. That the only source in the record to find the need for an assistive device was a one-time examiner whose report came relatively late in Jones's treatment history was reasonable grounds to find it suspect.[15]

Most importantly, the ALJ explained that Dr. Hopkins's opinion "was not consistent with or supported by the evidence of record." As the ALJ explained:

> The claimant's ability to perform less than a full range of sedentary work
> is supported by the claimant's treating records, which documents the
> claimant's lack of recurrent treatment for her severe impairments since

---

[15] Regardless, as will be addressed later, any error in the ALJ's rejection of this portion of Dr. Hopkins's opinion is harmless, since Jones admitted to a disability adjudicator who considered her applications at the initial level that she used her walker for prolonged ambulation and for navigating uneven surfaces, which are not generally expected to erode the sedentary unskilled occupational base assigned to her in the RFC. Jones has not disavowed these admissions here.

the amended alleged onset date, relatively mild findings on diagnostic imaging, no surgical intervention recommended by treating providers, stability with treatment, and generally normal to mild findings on physical examinations, to include a consistently normal gait and station and strength findings. Such extensive stability is not consistent with the claimant's allegations. The evidence of record demonstrates the claimant is able to drive a car, do some chores, shop in stores, and prepare meals (Exhibit B3E and Supplemental Hearing Testimony). The limitation to less than a full range of sedentary work accommodates her asthma, neck and back disorder, foot disorder, carpal tunnel syndrome ("CTS"), migraines, narcolepsy, obesity, history of a seizure disorder, and vertigo, as well as deficits secondary to pain or medication side effects.

(Doc. 14, PageID.82).

This summation is consistent with the ALJ' discussion of the record evidence preceding it (*see id.*, PageID.80-81), which Jones largely fails to address, instead pointing to portions of the record she asserts are more supportive of Dr. Hopkins's opinions. Many of those, however, are simply diagnoses, general notations of pain, and the like; "the mere existence of these impairments does not reveal the extent to which they limit [Jones's] ability to work or undermine the ALJ's determination in that regard." *Moore*, 405 F.3d at 1213 n.6. Moreover, an ALJ's finding will be upheld even if the evidence preponderates against it, so long as it is supported by substantial evidence, *Ingram*, 496 F.3d at 1260, a burden that is "not high." *Biestek*, 139 S. Ct. at 1154. Jones has failed to convince the undersigned that the ALJ's decision to find Dr. Hopkins's opinion not supported by or consistent with the overall evidence of record does not meet this burden.

### b.   **Assistive Walking Device**

Jones next argues that the ALJ committed reversible error because he "did not

evaluate or consider [her] use of a walker or a cane" in accordance with Social Security Ruling (SSR) 96-9p (July 2, 1996). (Doc. 32, PageID.1115). No reversible error has been shown.

SSR 96-9p is entitled "Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work—Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work." Among other things, that Ruling "provide[s] adjudicative guidance as to the impact of various RFC limitations and restrictions on the unskilled sedentary occupational base[,]" including the impact of a claimant's use of a "medically required hand-held assistive device." 1996 WL 374185, at *6-7. "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." *Id.* at *7.

In a Functional Report to the SSA dated April 14, 2018, Jones reported that she "need[s] to use a walker when neurological attacks occur." (Doc. 14, PageID.378).[16] As the Commissioner correctly points out, the ALJ considered Dr. Hopkins's opinion that Jones "needed an assistive device to ambulate" because she has "a strong fall risk without an assistive device" and "a history of falls." (*See* Doc. 14, PageID.82, 949). However, the ALJ rejected the limitations assigned by Dr. Hopkins, finding they were "not consistent with or supported by the evidence of

---

[16] Jones did not similarly report the use of a cane in that document.

record[,]" and specifically noting that "no treating physician has opined [Jones] requires an assistive device." (*Id.*, PageID.82). As the Court has already found, that finding was reasonable.

Jones claims that Dr. Hopkins only "noted that [Jones] requires the use of a cane and that a cane is medically necessary[,]" (Doc. 32, PageID.1115 (citing "Tr. 902")), while the ALJ's decision "is silent on [Jones's] use of a walker." (*Id.*, PageID.1116). Jones bases this argument on a form Medical Source Statement Dr. Hopkins attached to his report, on which he checked "yes" to pre-written questions asking "does the individual require the use of a cane to ambulate" and "is the use of a cane medically necessary." (Doc. 14, PageID.958). However, in the part of his report that he drafted himself, Dr. Hopkins opined on the use of an "assistive device" in general, without any indication that "assistive device" was limited to a cane. (*Id.*, PageID.949). Accordingly, the undersigned rejects Jones's claim that Dr. Hopkins only offered an opinion on the need for a cane specifically.

Jones points out that one of the state agency reviewers who worked on her applications at the initial level considered Jones's reported use of a walker (*see id.*, PageID.192), but that notation does not help Jones's claim. First, the reviewer who completed that portion, "K. Rogers," does not appear to have been a medical professional; thus, that notation is not a "medical documentation" on the use of an assistive device. Second, Rogers noted that the "[c]urrent MER does not state that the cl uses any sort of hhad." (*Id.*). When contacted, Jones "stated that the walker is used for prolonged ambulation or ambulation on uneven surfaces[, and] that while

she does have some problems walking at home, she is able to do so w/out the hhad and uses the walls for stability." (*Id.*). "[I]f a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes," as Jones reported, then "the unskilled sedentary occupational base will not ordinarily be significantly eroded." SSR 96-9p, 1996 WL 374185, at *7. While Jones emphasizes her statement that she has some problems walking at home and uses the walls for stability, that is not in conflict with her other statement that she uses her walker for prolonged ambulation and ambulation on uneven surfaces (i.e., she foregoes using a walker at home for such activities by using the walls for stability instead).

Jones "concedes that her 'medical records' do not demonstrate the on-going use of an assistive walking device[,]" (Doc. 32, PageID.1116 (emphasis Jones's)), and the ALJ considered and rejected the only medical documentation suggesting an assistive walking device was necessary. Accordingly, Jones has failed to show the ALJ reversibly erred under SSR 96-9p's directives regarding consideration of assistive walking devices.

### c.    Listings 12.04 and 12.06

Next, Jones claims the ALJ reversibly erred by finding that she did not satisfy either Listing 12.04 (Depressive, bipolar and related disorders) or 12.06 (Anxiety and obsessive-compulsive disorders) at Step Three.

"Listings … 12.04[ and] 12.06 … have three paragraphs, designated A, B, and C; [a claimant's] mental disorder must satisfy the requirements of both paragraphs

A and B, or the requirements of both paragraphs A and C" in order to meet either of those listings. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(A)(2)(b). For paragraph B,

> …the ALJ makes determinations as to the claimant's abilities in four broad functional areas known as "Paragraph B" criteria. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1269 (11th Cir. 2019) (per curiam). The four areas consider the claimant's ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage herself. 20 C.F.R. § 404.1520a(c)(3)…
>
> The ALJ must assign a rating of none, mild, moderate, marked, or extreme to a claimant's limitation in each area of functioning. 20 C.F.R. § 404.1520a(c)(4). The ALJ must explain the results of this inquiry in the findings and conclusions. *Moore*, 405 F.3d at 1213–14. To find the presence of a listing-level mental impairment, the ALJ must find that a claimant has an "extreme" limitation in one of the four functional areas or a "marked" limitation in two. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b).
>
> A "mild" rating indicates that the claimant's functioning is "slightly limited;" a rating of "moderate" indicates a "fair" limitation. *Id.* § 12.00(F)(2)(b), (c). The ALJ uses all "relevant medical and non-medical evidence" in evaluating a claimant's mental disorder, including information about the claimant's daily activities at home and in the community. *Id.* § 12.00(F)(3)(a)–(b).

*Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1324–25 (11th Cir. 2021).

Here, the ALJ found that Jones did not satisfy paragraph B because he had only moderate limitation in all four functional areas. (*See* Doc. 14, PageID.78).[17] Jones argues that the ALJ erred in not finding "marked" limitations in two areas:

---

[17] The ALJ also determined that Jones did not satisfy the "paragraph C" criteria (*see* Doc. 14, PageID.79), a finding Jones does not challenge.

that of understanding, remembering, and applying information, and that of interacting with others.

A rating of "moderate" means a claimant's "functioning in th[at] area independently, appropriately, effectively, and on a sustained basis is fair[,]" while a rating of "marked" means it is "seriously limited." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(c)-(d)). The functional area of understanding, remembering, and applying information "refers to the abilities to learn, recall, and use information to perform work activities. Examples include: Understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions." *Id.* § 12.00(E)(1). The functional area of interacting with others "refers to the abilities to relate to and work with supervisors, co-workers, and the public. Examples include: cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness." *Id.* § 12.00(E)(2).

The ALJ explained his finding of moderate limitation in all four "paragraph B" criteria as follows:

The evidence of record demonstrates the claimant is able to drive a car, do some chores, handle money, shop in stores, and prepare meals (Exhibit B3E and Supplemental Hearing Testimony). The claimant has regularly presented for treatment with a normal mood, affect, behavior, judgment, and thought content. The undersigned notes the claimant was on the same psychiatric medications for years, and she stopped going to AltaPointe Health Systems ("AltaPointe") shortly after starting treatment there. She was noted to "no show" for two therapy appointments. While treating at AltaPointe, she reported fair benefit from her medications, and that she was tolerating them well without side effects. Per the evidence of record, her last clinic appointment was in April 2019 (Exhibits B19F and B23F). Accordingly, the totality of the clinical evidence is not consistent with more than moderate limitations in the paragraph "B" criteria.

In September 2018, State agency consultant Dr. Veits found that the claimant had moderate mental functional limitations under the paragraph "B" criteria (Exhibits B3A/B4A). The undersigned finds, based on the record as a whole, including evidence received at the hearing level, that the claimant has moderate mental functional limitations under the new "paragraph B" criteria (Exhibits B3A/B4A).

(Doc. 14, PageID.78).

Jones argues that the ALJ selectively focused on certain portions of the record to "cherry-pick" evidence showing milder limitations, while ignoring other portions showing more serious limitations. With regard to the area of understanding, remembering, and applying information, Jones asserts that the following evidence not discussed by the ALJ supports a marked limitation:

- A notation in a January 3, 2017 treatment note from Southern Psychiatry Associates assessing that Jones "often lost her train of thought and on MMSEE testing she showed significant problems with memory. She did not know day of the week, season, crossroad, she had trouble with 3 word recall." (Doc. 14,

PageID.524).

- A notation in a March 8, 2017 treatment note from Southern Psychiatry Associates assessing that Jones "has significant memory lapses at times…" (*Id.*, PageID.520).

- Notations from the same April 14, 2018 functional report the ALJ discussed (Exhibit B3E), in which Jones reports that she has "to be reminded to take a bath + brush [her] teeth[,]" that she has "a lot of bed ridden days because [she] can't function due to headaches, chronic pain, upset stomach, fatigue, frequent moodswings, + etc.[,]" and that "[m]ost of day [she is] in bed withdrawn from everything + everybody." (*Id.*, PageID.374).

- A notation in an August 14, 2018 treatment note from Springhill Physician Practices commenting that Jones reported "memory loss/changes," depression, and "poor concentration." (*Id.*, PageID.764).

- A notation in the report of Pamela Starkey, Psy.D.,[18] who performed a consultative examination of Jones on August 29, 2018, that Jones "was not deemed able at this time to manage any awarded benefits." (*Id.*, PageID.731). Dr. Pamela Starkey also noted that that Jones said "she feels 'embarrassed,' and would rather not be around people … because if she is talking, in 'mid-stream' she will forget what they are talking about." (*Id.*, PageID.727).[19]

---

[18] As Dr. Kenneth Starkey also provided evidence in Jones's case, the undersigned will refer to Dr. Pamela Starkey by her full name for clarity.

[19] However, Dr. Pamela Starkey also wrote that "[t]his was *not* noted in this evaluation[,]" (Doc. 14, PageID.727 (emphasis added)), contrary to Jones's assertion

- A notation in a November 1, 2018 treatment note from AltaPointe commenting that Jones "can forget thoughts mid-stream or will go to a store and forget what she wanted to buy." (Doc. 14, PageID.764).

With regard to Jones's accusation of "cherry-picking," it is well established that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision is not a broad rejection which is not enough to enable a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole.' " *Mitchell*, 771 F.3d at 782 (cleaned up). The whole of the ALJ's decision (i.e., his discussion of the evidence at all five steps) adequately indicates that he considered the record as a whole—the ALJ was not required to mechanically re-discuss all evidence at every step. Given the detailed discussion of the record evidence at Step Four, the ALJ acted reasonably in only discussing the evidence at Step Three that supported his findings there.

Given the rather broad terms used to define them, assessing the degree of separation between a "moderate" and a "marked" limitation—i.e. "fair" vs. "seriously limited"—necessarily involves some measure of judgment, and the Court cannot reweigh the evidence or substitute its judgment for the ALJ's. *Winschel*, 631 F.3d at 1178. Moreover, only substantial evidence needs to support the ALJ's decision, even if a preponderance of the evidence does not. *Barnes*, 932 F.2d at 1358. "The question is not … whether ALJ could have [reached some other conclusion], but whether the

---

that Dr. Pamela "Starkey noted that same behavior during the examination as well." (Doc. 32, PageID.1111 (emphasis Jones's)).

ALJ was clearly wrong [not to]." *Werner*, 421 F. App'x at 939.

While the evidence cited above could certainly support a "marked" limitation in the area of understanding, remembering, and applying information, such a finding is not compelled by it, and it does not significantly undermine the ALJ's view of the evidence. Moreover, a finding of moderate limitation in that area is supported by the medical opinions of Dr. Pamela—whose opinion the ALJ found persuasive, and who assessed an "adequate" ability to understand simple, concrete instructions, and a "moderately impaired" ability to remember and carry out simple, concrete instructions (Doc. 14, PageID.732)—and state agency reviewer Dr. Veits, who assessed moderate limitations in that functional area, as the ALJ noted. Therefore, substantial evidence supports the ALJ's finding.

Jones has not shown error in the ALJ's finding moderate limitation in the area of understanding, remembering, and applying information, nor has she argued that she has an extreme limitation in any other functional area. As marked limitations in two "paragraph B" criteria are required to meet Listing 12.04 or 12.06, the undersigned need not address Jones's argument that the ALJ should have also found marked limitation in the area of interacting with others.

### d.    Effects of Medications

Jones next argues that the ALJ reversibly erred in failing to consider certain side-effects of her medications. The undersigned disagrees.

"In determining whether [a claimant is] disabled, [the Commissioner] consider[s] all [the claimant's] symptoms, including pain, and the extent to which

[those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. [The Commissioner] will consider all of [the claimant's] statements about [his or her] symptoms, such as pain, and any description [his or her] medical sources or nonmedical sources may provide about how the symptoms affect [the claimant's] activities of daily living and [his or her] ability to work." 20 C.F.R. §§ 404.1529(a), 416.929(a). "Factor relevant to [evaluating the intensity and persistence of a claimant's] symptoms, such as pain, which [the Commissioner] will consider include … [t]he type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms…" *Id.* §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). *Accord Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 366 (11th Cir. 2010) (per curiam) (unpublished) ("In determining whether a claimant's impairments limit her ability to work, the ALJ considers the claimant's subjective symptoms, which includes the effectiveness and side effects of any medications taken for those symptoms. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv).").

At the April 2020 supplemental hearing, Jones and her attorney had the following exchange:

Q      Do the medications you take cause you any side effects?

A      Yes, sir, it does.

Q      What kind of side effects?

A      I get real dizzy, I get tired. I get upset stomach and some will cause my vision to be blurred and extreme mood swings.

Q      And on a typical day you spend time laying down?

A      Yes, sir.

Q      About how much time do you spend laying down between eight in the morning and five in the afternoon?

A      Over half of those, sir.

Q      Is that due to the medications, at least to some extent?

A      Yes, sir.

(Doc. 14, PageID.145-146).

The ALJ acknowledged Jones's hearing testimony that she "experiences medication side effects such as dizziness, fatigue, upset stomach, and blurred vision…" (Doc. 14, PageID.80). However, the ALJ found Jones's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record…" (*Id.*). Jones has not shown the ALJ erred. Though she points to portions of the medical record she claims corroborate her medication side-effects, none of those records indicates those symptoms were caused by her medication. As the undersigned has previously observed, "[t]he Eleventh Circuit has consistently held that an ALJ may discredit a claimant's alleged symptoms from medication side effects where the claimant has failed to report those side effects to her physicians and where the physicians have not otherwise expressed concern over those side effects." *Richardson v. Colvin*, No. CV 15-00147-N, 2016 WL 4445266, at *7 (S.D. Ala. Aug. 22, 2016) (citing cases).

### e.    RFC

Jones also claims the ALJ reversibly erred by failing to account for various

limitations in the RFC, and by failing to resolve various conflicts between the RFC and the vocational expert's testimony. The undersigned is not convinced.

First, Jones argues that the RFC failed to account for her ability to manage common work pressure, despite the ALJ finding "persuasive" the medical opinion of consultative examiner Dr. Pamela Starkey, which assessed "significant" impairment in Jones's ability to manage common work pressure. (Doc. 14, PageID.83, 732). However, the ALJ did not state that he found Dr. Starkey's opinion to be controlling. *See* 20 C.F.R. §§ 404.1520c(a), 416.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). Second, in finding Dr. Starkey's opinion persuasive, the ALJ noted that "the examiner did not define all terms," (Doc. 14, PageID.83), suggesting that the ALJ did not find the term to be "significant" to denote the level of severity Jones attaches to it. Jones has failed to show this judgment call was unreasonable. Third, Jones fails to adequately address why the RFC's limiting her to "simple, routine, and repetitive tasks" does not adequately account for such limitations.

Jones next argues the RFC's limitation to frequent handling and bilateral fingering does not adequately account for her carpal tunnel syndrome and fibromyalgia symptoms. To the extent Jones is arguing the mere fact that she has these impairments is indicative of greater limitations, the undersigned reiterates that "the mere existence of these impairments does not reveal the extent to which they limit [Jones's] ability to work or undermine the ALJ's determination in that

regard." *Moore*, 405 F.3d at 1213 n.6. Moreover, the ALJ considered much of the same evidence Jones cites in her brief in support of this argument,[20] and Jones has given the undersigned no reason to question the reasonableness of the ALJ's view of that evidence. And to the extent Jones argues Dr. Hopkins's medical opinion supports greater limitations, the undersigned has found the ALJ did not err in finding that opinion not persuasive, *see supra*.

Jones also argues the RFC "does not adequately address the symptoms of [her] headaches and medication side-effects which cause double and/or blurry vision." (Doc. 32, PageID.1126). Her argument on this point rests largely on speculation that limitations which the ALJ did not assess in the RFC would prevent her from performing certain requirements of the clerical addresser job. As explained previously, Jones has failed to show error in the ALJ's consideration of her medication side-effects, or in his formulation of the RFC.

Jones next argues that the ALJ should have questioned the vocational expert further on whether the job of clerical addresser requires production quotas (which, she argues, her "significantly impaired ability to manage common work pressure," carpal tunnel syndrome, and fibromyalgia would prevent her from meeting) and "whether the additional use of a typewriter involves a specialized type of finger dexterity that a person with carpal tunnel syndrome and fibromyalgia joint pain may

---

[20] (See Doc. 14, PageID.80 ("The claimant has reported bilateral hand, back, neck, and leg pain, as well as tingling of her hands and feet ... The claimant has reported a history of bilateral CTS ... She presented with a positive Tinel's sign and Phalen's sign; however, she had no visible signs of fasciculation potentials or muscular atrophy in either upper extremity.")).

not possess." (Doc. 32, PageID.1125-1126). However, as explained above, Jones has failed to show that the ALJ did not adequately account for those conditions in the RFC. Second, Jones cites no authority to support her contention that the ALJ was required to address these issues, and this Circuit has held that " 'SSR 00-4p imposes a duty on ALJs to identify and resolve [only] *apparent conflicts* between DOT data and VE testimony…' " *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1314 (11th Cir. 2021) (quoting *Washington v. Comm'r of Soc. Sec.* 906 F.3d 1353 (11th Cir. 2018)) (emphasis and ellipsis added). Jones has not convinced the undersigned that any of the alleged conflicts she claims are "apparent." *See id.* ("A conflict is 'apparent,' we explained, when it is 'reasonably ascertainable or evident,' i.e., when it is 'seeming[ly] real or true, but not necessarily so.' " (quoting *Washington*, 906 F.3d at 1366)).

Finally, Jones argues that the ALJ failed to reconcile existing conflicts between the vocational expert's testimony and the DOT. However, this argument largely concerns the vocational expert's testimony regarding jobs the ALJ omitted from his Step Five finding. Since the ALJ did not find that Jones could also perform those jobs, it is reasonable to conclude the ALJ implicitly resolved any inconsistencies in the vocational expert's testimony in favor of Jones. As to the job the ALJ actually found she could perform, clerical addresser, Jones argues that the ALJ should have more thoroughly addressed whether she could perform the fingering and handling requirements of the position. However, the RFC limited her to frequent handling and fingering, which is consistent with the requirements for clerical addresser imposed by the Dictionary of Occupation Titles. *See* DICOT 209.587-010, 1991 WL 671797.

No reversible error having been shown, [21] the Court finds that the Commissioner's final decision denying Jones's applications for benefits is due to be **AFFIRMED**.

## V.   *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Jones's June 4, 2018 DIB and SSI applications is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately hereafter in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 30th day of March 2022.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[21] Any additional claims of error Jones may have raised that are not expressly addressed herein are summarily rejected.